F I L E D
**United States Court of Appeals**
**Tenth Circuit**

**APR 27 2004**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

MUHAMMAD ARIF BHALLI,

Petitioner,

v.

JOHN ASHCROFT, Attorney General
of the United States,

Respondent.

No. 03-9532

(Board of Immigration Appeals)

(BIA No. A70 215 709)

---

**ORDER AND JUDGMENT** *

---

Before **BRISCOE** , **McKAY** , and **HARTZ** , Circuit Judges.

---

Petitioner Muhammad Arif Bhalli, a native and citizen of Pakistan, entered

the United States without inspection at San Ysidro, California, on March 3, 1992.

In 1997 the Immigration and Naturalization Service (INS) sought Petitioner's

removal. Petitioner conceded deportability, but applied for asylum, restriction on

---

*After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

removal,[1] and withholding of deportation under the Convention against Torture, claiming he faced persecution in Pakistan on the basis of his prior involvement in the Pakistan People's Party (PPP). An immigration judge (IJ) denied all three of Petitioner's claims for relief, and the Board of Immigration Appeals (BIA) affirmed without opinion under 8 C.F.R. § 1003.1(a) (formerly 8 C.F.R. § 3.1(a)).

Petitioner appeals, contending that the application of the BIA summary affirmance procedure to his claim violates the Constitution's Ex Post Facto Clause, that the failure of the Department of Homeland Security (DHS) to file a brief with the BIA violated due process, and that the IJ incorrectly decided the merits of his asylum, restriction-on-removal, and Convention against Torture claims. We exercise jurisdiction under 8 U.S.C. § 1252(a), *see Tsevegmid v. Ashcroft*, 336 F.3d 1231, 1235 (10th Cir. 2003), and affirm.

## I. BACKGROUND

### A. **Applicable Law**

An alien who fears persecution if returned to a particular country has two possible means of relief under the INA: asylum and restriction on removal. *Tsevegmid*, 336 F.3d at 1234. A grant of asylum permits the alien to remain in

---

[1] "Restriction on removal" was referred to as "withholding of removal" before amendments to the INA made by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), Pub. L. No. 104-208, 110 Stat. 3009. Although both parties and the IJ have used the term "withholding of removal," we will use the newer term.

this country; a restriction on removal forbids removal of the alien to the country where persecution may occur. *See* INA §§ 208 & 241(b)(3), codified at 8 U.S.C. §§ 1158 & 1231(b)(3); *see also Tsevegmid*, 336 F.3d at 1234. Asylum is within the discretion of the Attorney General, while restriction on removal is granted to qualified aliens as a matter of right. *See INS v. Cardoza-Fonseca*, 480 U.S. 421, 424 (1987).

1. **Asylum**

Under § 208(b)(1) of the INA, 8 U.S.C. § 1158(b)(1), to be eligible for a discretionary grant of asylum by the Attorney General, an alien must first establish status as a refugee. *See Krastev v. INS*, 292 F.3d 1268, 1270 (10th Cir. 2002). The INA defines a refugee as "any person . . . outside [his] country of . . . nationality . . . who is unable or unwilling to return to, and is unable or unwilling to avail himself . . . of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A).

An applicant can establish status as a refugee by showing he either (1) "has a well-founded fear of future persecution," *Krastev*, 292 F.3d at 1270 (internal brackets omitted), (2) "has suffered past persecution, which gives rise to a [rebuttable] presumption [of] . . . a well-founded fear of future persecution," *id.*,

or (3) has suffered "past persecution so severe as to demonstrate compelling reasons for being unwilling or unable to return" to his country of nationality, *id.* at 1271 (internal quotation marks omitted). An alien basing his asylum claim upon a well-founded fear of future persecution must show both a genuine, subjective fear of persecution, and "an objective basis by credible, direct, and specific evidence in the record, of facts that would support a reasonable fear [of] . . . persecution." *Yuk v. Ashcroft*, 355 F.3d 1222, 1233 (10th Cir. 2004) (internal quotation marks omitted).

2. **Restriction on Removal**

Applications for restriction on removal are governed by INA § 241(b)(3)(A), 8 U.S.C. § 1231(b)(3)(A), which requires an applicant to show that his "life or freedom would be threatened in [his home] country because of [his] race, religion, nationality, membership in a particular social group, or political opinion." The Attorney General may not remove an alien if the alien is able to establish "a clear probability of persecution" in the country to which he would be returned. *Tsevegmid*, 336 F.3d at 1234. The standard of proof for restriction on removal is "more demanding than the well-founded fear standard applicable to an asylum claim." *Id.* (internal quotation marks omitted). Thus, when an applicant fails to establish the objective component of a well-founded fear of persecution, he necessarily fails to establish entitlement to restriction on

removal. *See Batalova v. Ashcroft,* 355 F.3d 1246, 1255 (10th Cir. 2004); *Yuk,* 355 F.3d at 1236 (IJ correctly denied restriction on removal when "petitioners failed to meet the lower standard of showing entitlement to asylum").

### 3. Convention against Torture

The Convention against Torture was implemented in the United States by the Foreign Affairs Reform and Restructuring Act of 1998, Pub. L. No. 105-277, § 2242, 112 Stat. 2681 at 822 (1998). *See Sviridov v. Ashcroft*, 358 F.3d 722, 724 n.2 (10th Cir. 2004). "It permits withholding of removal for an alien who establishes that 'it is more likely than not that he or she would be tortured if removed to the proposed country of removal.'" *Id.* (quoting 8 C.F.R. § 208.16(c)). As defined in implementing regulations,"torture" is confined to acts "inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." 8 C.F.R. § 208.18(a)(1). Thus, in order to establish a withholding-of-removal claim under the Convention against Torture, an alien must show that it is more likely than not that he would be tortured by, or with the consent or acquiescence of, a government official should he return to his country of origin.

### B. Factual Background

Petitioner's asylum, restriction-on-removal, and Convention against Torture claims are based on persecution he allegedly experienced in Pakistan prior to his

departure for the United States, due to his membership in and service for the local chapter of the PPP in his hometown of Sialkot.

At his hearing on June 8, 1999, Petitioner gave the following account of that persecution: Petitioner joined the local chapter of the PPP in 1981, when Pakistan was under marshal law and the PPP and other political parties were outlawed. In 1985 Petitioner's father, also a PPP member, was assassinated when a car deliberately rear-ended his motorcycle. In 1987 Petitioner became general secretary of the local PPP chapter. When marshal law was lifted and free elections held in 1988, the PPP rose to power nationally, after which Petitioner was put in charge of public works projects in his home town. But in 1990 the PPP lost power to its rival, the Islami Jamhoori Ittehad (IJI), and the new government began seeking retribution against PPP officials—including Petitioner's uncle and himself. Agents of the new government harassed Petitioner to return monies spent on a sewer project, ultimately abducting and torturing Petitioner for two weeks. In 1991 Petitioner moved to Pakistan's capital, Lahore, where he was arrested in connection with the sewer project, this time based on the allegation that he had stolen money from the project. Petitioner went into hiding in Lahore, and then fled to Karachi. A few months later, at the urging of the president of the Karachi chapter of the PPP, Petitioner fled to the United States.

On July 29, 1997, the INS issued a Notice to Appear, seeking to deport Petitioner for entering the United States without inspection. At a removal hearing on June 8, 1999, Petitioner sought asylum, restriction on removal, and withholding of removal under the Convention against Torture on the basis of political persecution in Pakistan. The IJ denied all three of Petitioner's claims on several related bases. First, he found that Petitioner's testimony and evidence as to his father's alleged murder, and his alleged abduction and torture at the hands of IJI government agents, was not credible. The remainder of Petitioner's allegations of persecution, the IJ observed, amounted to "some mistreatment, but nothing serious." Oral Decision at 9. Second, the IJ observed that even if Petitioner's abduction claim were true, it occurred at the hands of local functionaries rather than the national government. Third, he held that Petitioner failed to show that his fear of persecution was countrywide. Finally, he dismissed the contention that the grant of asylum to Petitioner's brother had any bearing on Petitioner's claims.

Petitioner timely appealed to the BIA. Under 8 C.F.R. §1003.1(a)(7) & (e), the BIA assigned the case to a single board member who affirmed the IJ's decision without opinion on July 10, 2003. Petitioner now appeals to this court.

## II.  DISCUSSION

### A.  Standard of Review

"Where . . . the BIA summarily affirms or adopts an immigration judge's decision, this court reviews the judge's analysis as if it were the BIA's." *Tsevegmid*, 336 F.3d at 1235.  Our standard of review is highly deferential:  "We review the IJ's resolution of the initial refugee status question under a substantial evidence standard."  *Yuk*, 355 F.3d at 1233.  This means that the IJ's adverse asylum decision "must be upheld if supported by reasonable, substantial and probative evidence on the record as a whole."  *Krastev*, 292 F.3d at 1275.  A determination that the applicant lacks credibility will be upheld only when the IJ gives "specific, cogent reasons" for that determination.  *Sviridov*, 358 F.3d at 727.

### B. Petitioner's Challenges

#### 1.  Ex Post Facto Clause

Petitioner contends that the BIA's use in his case of its new summary affirmance procedures violated the Ex Post Facto Clause of the Constitution.  He argues that because his appeal was filed on June 22, 1999, and "the rules were changed [in] January, 2003[,]" the new regulation, 8 C.F.R. § 1003.1, should not apply.  Aplt. Br. at 1–2.  (For the sake of accuracy, we point out that the new regulations went into effect on October 18, 1999.  *See* 64 Fed. Reg. 56,135 (1998).)  But it is well established that the Ex Post Facto Clause does not apply to

laws and regulations determining an alien's right to remain in the United States. *See Galvan v. Press*, 347 U.S. 522, 531 (1954) ("[W]hatever might have been said at an earlier date for applying the *ex post facto* Clause, it has been the unbroken rule of this Court that it has no application to deportation."). This challenge therefore fails.

### 2. **Due Process Challenge**

Petitioner next contends that he was denied due process when he filed a brief with the BIA, the DHS did not, and then the BIA summarily affirmed. He asserts: "Summary decisions are reserved for litigants who have failed to file briefs such as the DHS did and not the Petitioner who has met his procedural burden." Aplt. Br. at 2. He cites no authority for this proposition, nor do we see any merit to it. We note that we recently held that the BIA's summary affirmance procedures do not violate due process. *See Yuk,* 355 F.3d at 1232.

### 3. **Challenges to IJ's Decision on the Merits**

Finally, Petitioner challenges the IJ's adverse determination of his asylum, restriction-on-removal, and Convention against Torture claims. He has three bases for this challenge.

#### a. **Alleged Failure to Consider Past Persecution**

Petitioner first argues that in ruling on his asylum claim, the IJ erred in considering only whether he had a well-founded fear of *future* persecution.

Instead, he seems to argue, the IJ should have based his decision on the past persecution Petitioner allegedly suffered in Pakistan. Quoting from the United Nations Handbook on Procedures and Criteria for Determining Refugee Status (UN Handbook), Petitioner asserts that "a person who . . . has suffered under atrocious forms of persecution should not be expected to repatriate[.]" Aplt. Br. at 3.

The UN Handbook is not binding on this court. *INS v. Aguirre-Aguirre*, 526 U.S. 415, 427 (1999). Our case law does, however, recognize that under the INA an asylum applicant can establish refugee status by showing he "has suffered past persecution, which gives rise to a [rebuttable] presumption [of] . . . a well-founded fear of future persecution," *Krastev*, 292 F.3d at 1270, or has suffered "past persecution so severe as to demonstrate compelling reasons for being unwilling or unable to return" to his country of nationality, *id.* at 1271 (internal quotation marks omitted). Contrary to Petitioner's assertion, the IJ understood this to be the law, and applied it to his case. *See* Oral Decision at 1 ("If [Petitioner] can show that he was persecuted in the past . . . he is entitled to asylum."); *id.* at 7–9 (weighing evidence of past persecution). Petitioner's argument on this point therefore has no merit. (We note that Petitioner does not assert that the IJ's determination of his past-persecution claim fails substantial-evidence review. As a result, we need not examine that matter.)

-10-

b. **Asylum Claim of Petitioner's Brother**

Petitioner next argues that the IJ's failure to take his brother's successful asylum application into consideration meant that he "incorrectly decide[d] the facts[.]" Aplt. Br. at 3. We disagree.

The IJ accepted the Petitioner's assertion that his brother had been granted asylum based on his political opinion. But the IJ found this grant inapplicable to Petitioner's claim. The IJ observed that because Petitioner's claim was "not based on social group or religion shared with his brother, . . . [t]he fact that his brother was granted [asylum] . . . [does not] compel[] that [Petitioner] receive the same treatment." Oral Decision at 9.

The political associations of family members can have a bearing on political-opinion-based asylum claims in certain circumstances. "A large number of imputed political opinion cases involve the applicant's family's political associations" because "a persecutor may presume that an individual who is closely identified with his family . . . shares the beliefs and opinions of other family members." Deborah E. Anker, Law of Asylum in the United States 332 (3d ed. 1999). But Petitioner is not basing his claim on an *imputed* political opinion; rather, he asserts that his own political activities engendered the past persecution that he alleges took place. Questioning at the June 8, 1999, hearing, showed that Petitioner's brother's claim was based on specific incidents of persecution that he

had suffered at the hands of the PPP's rival party. Thus, as the IJ correctly reasoned, the success of Petitioner's brother's claim—based on those incidents—had no bearing on Petitioner's own claim—based on another set of alleged incidents.

### c. **Restriction-on-Removal and Convention against Torture Claims**

Third, Petitioner contends that the IJ "failed to consider [restriction on] removal or adequately explore Article 3 of the [CAT]." Aplt. Br. at 3. This claim also flies in the face of the IJ's actual decision. The IJ correctly laid out the standards for both of these claims at the outset of his decision, and explicitly turned down each at the end.

With respect to the restriction-on-removal claim, because Petitioner failed to establish the objective component of a well-founded fear of persecution for the purpose of his asylum claim, he necessarily failed to establish entitlement to restriction on removal. *See Batalova,* 355 F.3d at 1255; *Yuk,* 355 F.3d at 1236 (IJ correctly denied restriction on removal when "petitioners failed to meet the lower standard of showing entitlement to asylum"). Once the IJ rejected Petitioner's asylum claim, he need not have looked into the restriction-on-removal claim further.

As for Petitioner's Convention against Torture claim, the IJ correctly noted that "for that [claim] he must show that it is more likely than not that he would be

tortured by a government agent. It need not be based on any of the reasons in the statute." Oral Decision at 2. *See Sviridov,* 358 F.3d at 724 n.2; 8 C.F.R. § 208.16(c); 8 C.F.R. § 208.18(a)(1). The IJ denied Petitioner's Convention against Torture claim on two grounds: (1) the IJ did not credit Petitioner's testimony on his past experiences, and (2) "his fear of torture apparently was at the [hands of] the local group [from whom] he had suffered previously, and not at the hands of a government agent." Oral Decision at 9. Because the IJ gave specific, cogent reasons for discrediting Petitioner's testimony, *id.* at 7–8, we uphold his credibility determination. *See Sviridov*, 358 F.3d at 727. Without Petitioner's testimony, there is insufficient evidence to show that he is entitled to relief under the Convention. We uphold the IJ's denial of Petitioner's Convention against Torture claim on that basis, so we need not reach the second basis for the decision.

## III. CONCLUSION

We AFFIRM the decision of the BIA.

ENTERED FOR THE COURT

Harris L Hartz
Circuit Judge